J-S20035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SETH DAVID BYRD | |
| Appellant | No. 1744 WDA 2014 |

Appeal from the Judgment of Sentence of October 15, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0000172-2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                **FILED JULY 07, 2015**

Seth David Byrd appeals his October 15, 2014 judgment of sentence, which was entered following his jury convictions of burglary, criminal trespass, and theft by unlawful taking of movable property.[1]  We affirm.

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as verdict-winner, supports the following account of the factual history of this case.  On the morning of September 1, 2013, the victim, Ronald Ritenour, accompanied his wife to the hospital and did not return home until that evening.  On that same evening, between 7 p.m. and 7:30 p.m., while Ritenour was away from his residence, Ritenour's neighbors, Beulah and Lynn Keslar, witnessed Byrd approach Ritenour's

---

[1]    **See** 18 Pa.C.S. §§ 3502(a)(2), 3503(a)(1)(i), 3921(a), respectively.

residence in Acme, Pennsylvania, in Fayette County, in a red Ford Explorer. Byrd, a close friend to the Ritenour family, then entered the porch attached to Ritenour's residence. Shortly thereafter, Byrd exited Ritenour's porch and visited the trailer next door, where Ritenour's son lived. Finding Ritenour's son also away from his residence, Byrd returned to and reentered Ritenour's home. Five to ten minutes later, Byrd exited the home, returned to his vehicle, and drove away. The next day, the Keslars notified Ritenour that Byrd had entered his house on the previous evening.[2]

On September 4, 2013, three days after Byrd was seen entering Ritenour's home, Ritenour noticed that the safe deposit box in his kitchen was empty. $677.02 was missing from this safe, which was precisely the amount of money that Ritenour took home from his deposit of a retirement check the prior week. Unable to find the missing money, Ritenour's wife Judy contacted the police on September 16, 2013. That same day, Officer Robert Broadwater met with Judy Ritenour, Ronald Ritenour, Beulah Keslar, and Lynn Keslar and learned that Byrd had been present at Ritenour's residence on September 1, 2013.

_____

[2] At trial, Beulah Keslar and Lynn Keslar testified that the front door to Ritenour's residence is enclosed by a front porch area, which they saw Byrd enter. Notes of Testimony, 10/8/2014, at 30-32; 35-36. Neither Beulah Keslar nor Lynn Keslar witnessed Byrd enter Ritenour's front door because the enclosure obstructed their view. *Id.* However, viewing all of the facts, including their testimony, in a light most favorable to the Commonwealth, it was reasonable to conclude that Byrd entered the interior of Ritenour's house after entering the enclosed front porch.

On September 18, 2013, Officer Broadwater visited Byrd at his home in White, Pennsylvania. Officer Broadwater informed Byrd that he was conducting an investigation regarding Ritenour and asked Byrd if he had any information. According to Officer Broadwater, Byrd asserted that he was present at Ritenour's residence on September 1, 2013, and that "[h]e saw some money sitting on the table and thumbed through it." Notes of Testimony ("N.T."), 10/8/2014, at 59-60. Byrd also told Officer Broadwater that "nobody was home at the time he was at the house," and that "he took a couple twenties but could not remember how much it was." *Id.*

Officer Broadwater returned to Byrd's residence on September 20, 2013, to obtain a written statement from Byrd. Byrd knowingly and freely provided Officer Broadwater with a non-custodial written statement, which detailed the following account of his visit to Ritenour's house on September 1, 2013:

> I pulled into [Ritenour's] driveway, knocked on [his] door because on the day my Great Aunt Shirley passed away I called to check on Judy [Ritenour] and she didn't sound good. So I was there to check on her. When she didn't answer[,] I walked to [Ritenour's son's trailer] [and] knocked and yelled figuring something was wrong. I walked back to [Ritenour's house] and knocked and yelled again[,] and whenever I was leaving the porch I picked up a [twenty-dollar bill] from the right side of the deep freezer. I assumed I dropped it from the side of my cigarette pack[,] and then I left the place and came home.[3]

---

[3] Byrd's non-custodial written statement was read into evidence, *verbatim*, at trial, by Officer Broadwater.

*Id.* at 63.

On November 11, 2013, charges were filed against Byrd. Byrd was arrested on November 14, 2013.

After a two-day jury trial, Byrd was convicted on October 9, 2014, of burglary, criminal trespass, and theft by unlawful taking of movable property. On October 15, 2014, Byrd was sentenced to one to two years' imprisonment and ordered to pay Ritenour forty dollars in restitution. Byrd did not file a post-sentence motion.

On October 23, 2014, Byrd simultaneously filed a notice of appeal and his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[4] On December 9, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) in response to Byrd's concise statement.

Byrd raises the following issues on appeal:

_____

[4] Apparently unaware that Byrd already had filed a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925, on November 5, 2014, the trial court directed Byrd to file his concise statement, which he previously had filed on October 23, 2014. This Court has indicated in prior cases, if by implication, that the premature filing of a Rule 1925(b) statement has no negative consequence when the trial court addresses the issues contained in that statement. *Cf. Commonwealth v. Smith*, 955 A.2d 391, 393 (Pa. Super. 2008) (limiting the Commonwealth to issues included in its Rule 1925(b) statement when the Commonwealth filed it without being ordered to do so and the trial court restricted its review to the issues raised therein). Because the trial court clearly prepared its Rule 1925(a) opinion with the benefit of Byrd's statement, we find no impediment to review. However, because a trial court's decision to seek such a statement is discretionary, we advise counsel to await such an order before filing his concise statement in the future.

1) Did the Court err in permitting the Commonwealth to introduce [Byrd's] statement over defense counsel's objection based on *corpus* [*delicti*] when no evidence of [Byrd] or anyone else committing a crime had been introduced?

2) Did the Commonwealth fail to establish beyond a reasonable doubt that [Byrd] ever entered the unoccupied residence at any time as required of the crime of burglary and criminal trespass?

3) Did the Commonwealth fail to establish beyond a reasonable doubt that [Byrd] took any money from the residence in question?

Brief for Byrd at 7 (capitalization omitted; italics added).

In his first issue, Byrd argues that the trial court misapplied the *corpus delicti* rule when it "permitted the introduction of [Byrd's] statements without evidence of an actual crime." *Id.* at. 12. In the instant case, Byrd provided Officer Broadwater with two separate statements: a verbal statement on September 18, 2013, and a written statement on September 20, 2013. In his brief, however, Byrd does not indicate whether he wishes to challenge a specific statement or both statements pursuant to the *corpus delicti* rule.[5] Notably, both statements that Byrd provided to Officer Broadwater were inculpatory. For these reasons, we review the applicability of the *corpus delicti* rule to both of Byrd's statements. *See* *Commonwealth v. Verticelli*, 706 A.2d 820, 824 (Pa. 1998), *abrogated on other grounds by* *Commonwealth v. Taylor*, 831 A.2d 587 (Pa. 2003)

_____

[5] Byrd's counsel raised objections during trial pursuant to the *corpus delicti* rule regarding both the September 18 and September 20, 2013 statements. N.T., 10/8/2014, at 58, 61.

(holding that only inculpatory statements of an accused are subject to the *corpus delicti* rule).

Our standard of review for a challenge to the *corpus delicti* rule is well settled:

> The *corpus delicti* rule is designed to guard against the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's *admission* of the accused's statements[,] and the second step concerns the fact[-]finder's *consideration* of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact[-]finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Young***, 904 A.2d 947, 956 (Pa. Super. 2006) (internal quotation marks omitted; emphasis in original) (quoting ***Commonwealth v. Rivera***, 828 A.2d 1094, 1103-04 & n.10 (Pa. Super. 2003)).

After carefully reviewing the record, we find no abuse of discretion. Prior to the fact-finder's consideration of Byrd's statements, the Commonwealth produced ample evidence to establish beyond a reasonable doubt the crimes of burglary, criminal trespass, and theft by unlawful taking of movable property.

A person commits a burglary when, "with the intent to commit a crime therein," he "enters a building or occupied structure . . . in which at the time of the offense no person is present," 18 Pa.C.S. § 3502(a)(2), unless the building is abandoned, the premises are open to the public, or he is licensed or privileged to enter. 18 Pa.C.S. § 3502(b). A person is guilty of criminal trespass if, "knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge[,] or surreptitiously remains in any building or occupied structure." 18 Pa.C.S. § 3503(a)(1)(i). An occupied structure is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S. § 3501.

A person commits theft by unlawful taking of movable property when he "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Movable property is defined as "[p]roperty the location of which can be changed." 18 Pa.C.S. § 3901. Property of another is defined, in relevant part, as "property in which any person other than the actor has an interest which the actor is not privileged to infringe." *Id.* Deprivation is defined as

- 7 -

"dispos[ing] of the property so as to make it unlikely that the owner will recover it." *Id.*

First, Ritenour's son, Ronald, testified that Byrd was his cousin and a close friend that once stayed with the Ritenour family "for a long time." N.T. at 10-12. Ronald also testified that Ritenour generally locked the front door to his home, but the location of a spare key to that door was "common knowledge." *Id.* at 23-24. Additionally, Ritenour testified that he locked his front door before he left his residence on September 1, 2013, and that nobody, other than he and his wife, had permission to enter their home. *Id.* at 42, 47. Beulah Keslar and Lynn Keslar both testified that they witnessed Byrd enter Ritenour's enclosed porch on September 1, 2013, while Ritenour was out of the house. *Id.* at 30-32; 35-36.

Ritenour testified that $677.02 remained in his unlocked safe before he left for the hospital on September 1, 2013. *Id.* at 43. Shortly after September 1, Ritenour discovered that his money was missing and learned that Ritenour was present at his home on September 1, 2013. *Id.* at 37, 47. Accordingly, Ritenour and Byrd were the only people to enter his home on September 1, 2013. *Id.* at 47. Further, Judy Ritenour, who remained in the hospital between September 1 and September 9, 2013, was the only person other than Ritenour who had permission to enter the safe. *Id.* at 47. Thus, Byrd was the only person present at Ritenour's home on September 1, 2013, who lacked permission to enter the safe.

All of the above-mentioned testimony was adduced before Officer Broadwater testified regarding Byrd's statements. This body of testimony, viewed independently of Byrd's statement, clearly establishes each of the necessary elements of the charged crimes. Consequently, the Commonwealth established the *corpus delicti* of the charged crimes beyond a reasonable doubt before Officer Broadwater testified regarding Byrd's statements. Thus, Byrd's statements to Officer Broadwater were admissible and the jury properly considered those statements in reaching its verdict.

In his second issue, Byrd challenges the sufficiency of the Commonwealth's evidence to convict him of burglary and criminal trespass. *See* Brief for Byrd at 13. When examining a challenge to the sufficiency of evidence, we apply the following standard of review:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)). Circumstantial evidence itself is sufficient to prove any element or all of the elements of burglary and criminal trespass. *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1077-78 (Pa. Super. 2013).

Byrd argues that the Commonwealth failed to prove beyond a reasonable doubt that he entered Ritenour's residence, a necessary element to prove burglary. *See* 18 Pa.C.S. § 3502(a)(2). Although Byrd does not dispute that he was present at Ritenour's residence[6] on September 1, 2013, he maintains that he only entered the enclosed front porch area in order to knock on the front door. Brief for Byrd at 13-14. .

According to Officer Broadwater, in Byrd's September 18, 2013 oral statement, he told Officer Broadwater that he entered Ritenour's unoccupied residence on September 1, 2013. N.T. at 59. Byrd also told Officer Broadwater that he took some money that was sitting on a table in Ritenour's residence. *Id.* Because these statements standing alone provide sufficient evidence to establish that Byrd met the principal elements of burglary and trespass, Byrd's claim necessarily hinges upon the argument that the statements he gave to Officer Broadwater were inadmissible.

---

[6] Byrd concedes that Ritenour's residence constitutes a building or occupied structure pursuant to 18 Pa.C.S. § 3502 (a)(2). Brief for Byrd at 13.

- 10 -

However, Byrd's statements were admissible, and the jury properly considered those statements in reaching its verdict.

Consequently, we need only to determine whether Byrd was licensed or privileged to enter Ritenour's residence on September 1, 2013. To that end, Ritenour testified that he locked his front door before he left his residence on September 1, 2013, and that he did not give Byrd permission to enter his home. *Id.* at 42, 47. Viewing all of the evidence admitted at trial in the light most favorable to the verdict-winner, there is sufficient evidence to enable the fact-finder to find every element of burglary and criminal trespass, including the lack of a license or privilege, beyond a reasonable doubt.

In his final issue, Byrd challenges the sufficiency of the evidence developed by the Commonwealth to convict him of theft by unlawful taking of movable property. *Id.* at 15. Specifically, Byrd argues that the statements he made to Officer Broadwater should not have been introduced at trial, and, without those statements, "there is no other evidence that he took the money from the Ritenour residence." *Id.*

Circumstantial evidence is sufficient to establish all of the elements of unlawful taking of movable property, including intent. *Commonwealth v. Lloyd*, 509 A.2d 868, 870 (Pa. Super. 1986). Once more, Byrd's argument clearly hinges upon the exclusion of his inculpatory statements. *See* Brief for Byrd at 15. Byrd's statements, which were admissible, viewed in tandem with the corroborating witness testimony, provide sufficient evidence to

support the jury's finding that Byrd intended to deprive Ritenour of his property. For these reasons, Byrd's third claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015