J-S55002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEREMIAH POLKA | : | |
| | : | |
| Appellant | : | No. 156 WDA 2020 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s):  CP-03-CR-0000792-2018

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    FILED FEBRUARY 05, 2021

Jeremiah Polka appeals from his judgment of sentence of twenty-four to sixty months of imprisonment imposed after a jury convicted him of multiple counts of driving under the influence ("DUI").  We affirm.

The trial court offered the following summary of the evidence offered at Appellant's trial:

> At approximately 4:00 a.m. on the morning of August 26, 2018, Pennsylvania State Troopers Peter Schultz ("Schultz") and Kalee Wietrzykowski ("Wietrzykowski") were dispatched to an area near [the] intersection of Route 66 and Dime Road in Bethel Township, Armstrong County.  An individual called 911 and reported seeing [Appellant] in his vehicle.  Trooper Schultz stated, "I was dispatched to a possible disabled motorist for a welfare check of an individual."  The caller left the scene in his own vehicle after briefly making contact with the troopers.  Once the caller departed Trooper Schultz testified that "I observed the silver vehicle with two tires on the roadway.  They were approximately

_____

[*] Retired Senior Judge assigned to the Superior Court.

one and half to two feet to the right of the fog line, so it is clearly on the roadway." The keys were in the ignition and the motor was running. Schultz went on to testify that he

> walked up to the driver's side of the vehicle where I observed [Appellant] seated in the driver's seat, head slouched down towards his chest. He was not responsive. I knocked on the window. He did not wake up. I had to open up the driver's side door where I shook him. He was extremely cold to the touch. He did not wake up. I had to perform a sternum rub. I am not sure what kind of condition he is in. I smelled a strong odor of an alcoholic beverage emanating from the vehicle. His breath was extremely shallow at the time.

Trooper Schultz noted that once he was able to rouse [Appellant] and get him out of the vehicle he could "observe, right in the center console, in plain view, without looking hardly at all, was two marijuana smoking devices and small bag of suspected marijuana." Trooper Schultz also found a cooler full of unopened beer in the backseat. Schultz further testified "I did not observe any empty containers leading up to vehicle, in the vehicle, or around the vehicle."

Once [Appellant] was out of the vehicle, Trooper Schultz attempted a field sobriety test known as the lack of convergence test, and noted, "he wasn't able to focus on my finger, so it did not go well at all." [Trooper] Schultz also testified that once [Appellant] was out of the vehicle there was still an odor of alcohol and that "he was a little disheveled. His movements were slow and sluggish." [Appellant] also made statements to Trooper Schultz "about his driving that night, him driving to the scene." [Appellant] stated that he believed he was on State Route 85 coming from Plumville. However, [Appellant] was approximately 20 miles away from where he believed he was.

Trooper Wietrzykowski also testified during the jury trial. She testified that she was "dispatched for a suspicious vehicle to check on the welfare of an operator sleeping behind a running vehicle. The call came in as a Honda running, operator asleep." In her testimony, she noted that [Appellant] was unable to walk appropriately and that she smelled an alcoholic beverage on his breath and that he had red eyes. Trooper Wietrzykowski

performed the standardized field sobriety tests on [Appellant]. Specifically she performed the horizontal gaze nystagmus, the walk and turn, and the one -leg stand. He performed "extremely poor" on the walk and turn, exhibiting seven out of eight cues. She was unable to complete the one leg stand. [Appellant] also made several statements to the trooper while at the scene. "He stated 'I am going to be DUI and I have THC in my system.'" [Appellant] also made statements to Trooper Wietrzykowski about him driving.

> Q. Did [Appellant] ever make a statement to you concerning how his vehicle got to where it was?
>
> A. He did. He made multiple statements. The one was in regards to him pulling over. When we were leaving, he –
>
> Q. What do you mean when you were leaving?
>
> A. When we were en route back to the hospital, Mr. Polka stated, "Oh, at least I pulled over." I believe something along those lines the MVR stated.
>
> Q. How about when he was outside of the police vehicle still in handcuffs. Did he make any statements around that time about pulling over?
>
> A. He did, yes. He stated that he didn't want - along the lines of he did not want to go out again because it was no fun. Then he stated that he pulled over. It was more or less, "Well, at least I pulled over." I don't remember the exact verbiage. He did state that he pulled over.

[Appellant] was transported to Armstrong County Memorial Hospital where he consented to a legal blood draw. After testing, it was determined that [Appellant] had a BAC of .168 percent and he tested positive for methamphetamine and THC, both the active and inactive metabolites.

[Appellant] testified during the trial as well. He stated that while there was much he could not remember about the evening in question, he did recall that it was not him, but rather a woman

named "Amanda" who drove the vehicle to where it was located by the troopers. After an evening of drinking at various bars and restaurants in the Armstrong County area she drove his vehicle, and left him in the location where he was observed by the 911 caller. [Appellant] made no mention of this woman to either trooper at the scene.

Trial Court Opinion, 3/25/20, at 2-4 (cleaned up).

Based upon this evidence, the jury found Appellant guilty of DUI—highest rate of alcohol, and several other DUI counts. The trial court sentenced Appellant as indicated above on the highest-rate count, and imposed no further penalty for the other convictions. Appellant filed a timely post-sentence motion, and, following its denial, a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Were inferences as to whether it was [Appellant] or Amanda who drove [Appellant]'s car to the vacant lot "more likely than not to flow from the proved fact on which it is made to depend"?

2. Did the Commonwealth prove that [Appellant]'s vehicle was actually on a "highway or trafficway," an element of the offense[,] under 75 Pa.C.S. § 102?

Appellant's brief at 3.

Since Appellant's questions both challenge the sufficiency of the evidence to sustain his convictions, we will address them together. The following principles govern our review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Reed, 216 A.3d 1114, 1119 (Pa.Super. 2019) (internal quotation marks omitted).

Appellant was found guilty of violating each of the following provisions of the DUI statute:

(c) Highest rate of alcohol.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(d) Controlled substances.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance . . .;

(ii) Schedule II or Schedule III controlled substance . . . which has not been medically prescribed for the individual; or

- 5 -

> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> . . . .
>
> (3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

While each of these offenses requires the individual to have operated or been in actual physical control of a vehicle, it does not require proof that the vehicle was ever in motion under the defendant's control. See, e.g., Commonwealth v. Young, 904 A.2d 947, 954 (Pa.Super. 2006). To satisfy this element of the offense, the Commonwealth must only establish, beyond a reasonable doubt, that the defendant controlled "either the machinery of the motor vehicle or the management of the vehicle's movement[.]" Commonwealth v. Brotherson, 888 A.2d 901, 904 (Pa.Super. 2005).

> Our precedent indicates that a combination of the following factors is required in determining whether a person had actual physical control of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. In addition, when the location of the vehicle supports an inference that it was driven, this inference will serve as a key factor in a finding of actual control[.]

Young, supra at 954 (cleaned up).

Further, since DUI is classified as a "serious traffic offense," it must occur upon a "highway" or "trafficway." See Commonwealth v. Lees, 135

A.3d 185, 189 (Pa.Super. 2016) (citing 75 Pa.C.S. §§ 3101(b), 3802(a)).

Those terms are defined as follows:

> "Highway." The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel. The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park.
>
>             . . . .
>
> "Trafficway." The entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.

75 Pa.C.S. § 102. Nonetheless, "Pennsylvania law recognizes that roadways in private areas, or areas restricted to permit-holders, can still meet the 'public use' requirement for purposes of Sections 3101, 102 and the DUI statute." Lees, supra at 189 (collecting cases holding that private parking areas are "trafficways").

In the case sub judice, Appellant attacks the Commonwealth's proof both as to his diving the vehicle at all, and to his being in control of the vehicle on a highway or trafficway. He asserts that the "vacant lot" where he was found was not a highway or trafficway. Thus, the Commonwealth offered no direct evidence that Appellant had been in control of the vehicle while under the influence. See Appellant's brief at 12-13.

Further, Appellant claims, the Commonwealth produced no circumstantial evidence to establish that he had driven the vehicle before the

troopers encountered him. He maintains that without evidence as to how Appellant traveled to the "vacant lot" where he was found, the jury had to engage in impermissible speculation to decide whether he or "Amanda" drove the vehicle to that location. Id. at 10. Appellant contends that the jury could not reasonably infer that he had been the driver, as the Commonwealth established that he had been deeply unconscious, and after he was revived with difficulty by the troopers, he believed himself to be in a location twenty miles from where he actually was with no recollection how he got there or into the driver's seat. Id. at 10-11.

Upon review of the Commonwealth's evidence, we conclude that Appellant's arguments are entirely without merit. As the trial court summarized, the Commonwealth offered proof that Appellant

> was found in the driver seat of his vehicle, with the engine running, with two [of] its tires on the shoulder of the road. Furthermore, [Appellant] stated that "at least he pulled over" on more than occasion. The troopers reported that there were no empty beer cans or liquor bottles that would support drinking after arriving at the location.

Trial Court Opinion, 3/25/20, at 8.

First, this evidence, supported by the certified record before us, was sufficient to allow a jury to conclude that the Commonwealth established beyond a reasonable doubt that Appellant drove his car to the spot where he was found, and that his self-serving testimony that someone else drove him there was not credible. See, e.g., Reed, supra at 1119 ("[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence

produced, is free to believe all, part or none of the evidence.") (cleaned up)).

Aside from Appellant's admissions that he drove, it was entirely proper for the jury to infer that the reason Appellant thought he was twenty miles away from where he was found, and had no recollection of how he got there, was not because "Amanda" drove him there and then departed, but because Appellant was so highly intoxicated. It was through reasonable inferences, not speculation, that the jury concluded that Appellant had driven under the influence on the roadway before pulling over and falling asleep.

Second, the Commonwealth's proof included direct evidence that Appellant was in control of his vehicle on a trafficway. Troopers Schultz and Wietrzykowski both testified that they encountered Appellant unconscious in the driver's seat of the vehicle while the engine was running. See N.T. Trial, 7/10/19, at 7-8, 40-42. We have held that such evidence establishes actual physical control for purposes of the DUI statute. See Commonwealth v. Toland, 995 A.2d 1242, 1246 (Pa.Super. 2010) (holding evidence that the defendant was "asleep in the driver's seat of the vehicle with the motor running and the headlights illuminated" established that he was in actual physical control of the movement of the vehicle).

Furthermore, the Commonwealth offered testimony and photographic evidence that the spot where Appellant was found was not some private "vacant lot," but an area open to public use. The Commonwealth's Exhibits 2 and 3 clearly show, respectively, the area in question during daylight hours,

and the position of Appellant's vehicle, with two wheels on the asphalt and two wheels on the roadside:

 

N.T. Trial, 7/10/19, at 13-15; Exhibits 2 and 3 (license plate redacted). This was sufficient evidence to establish that the troopers encountered Appellant on a trafficway. See Commonwealth v. Yaninas, 722 A.2d 187, 189 (Pa.Super. 1998) (holding evidence was sufficient where the Commonwealth established that the defendant was found asleep behind the wheel of a car stopped on the berm of the road); Commonwealth v. Crum, 523 A.2d 799, 800 (Pa.Super. 1987) (same).

Thus, we conclude that the Commonwealth offered sufficient evidence to allow the jury to conclude beyond a reasonable doubt that, while under the influence, Appellant both drove his vehicle on a roadway or trafficway before the troopers arrived, and that they found him in control of the vehicle on a trafficway. Consequently, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/5/2021</u>