**COMMONWEALTH OF PENNSYLVANIA,**
Appellee

v.

**Randy YOUNG, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 2006.

Filed July 26, 2006.

James R. Robinson, York, for appellant.

Laurence F. Stone, Assistant District Attorney, York, for Commonwealth appellee.

BEFORE: STEVENS, ORIE MELVIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 Following a non-jury trial on September 14, 2005, Appellant Randy Young was found guilty of Driving Under the Influence of Alcohol, Highest Rate[1] and Careless Driving.[2] Appellant appeals from the judgment of sentence entered in the Court of Common Pleas of York County on October 17, 2005, at which time Appellant was sentenced to ninety (90) days to five (5) years in prison.[3] We affirm.

¶ 2 On July 29, 2005, Appellant filed a document entitled Omnibus Pre–Trial Motions which contained a Writ of *Habeas Corpus* and a Motion to Suppress. In the Writ of *Habeas Corpus,* Appellant contended the Commonwealth failed to establish a *prima facie* case that Appellant was operating the motor vehicle on March 26, 2005. In his Motion to Suppress, Appellant argued that Officer Graybill did not have the requisite probable cause to effectuate an arrest on March 26, 2005. Appel-

---

1. 75 Pa.C.S.A. § 3802(c).

2. 75 Pa.C.S.A. § 3714.

3. Specifically, the sentencing court provided that forty-five (45) days would be served as work release followed by ninety (90) days house arrest, followed by the standard terms and conditions of probation. N.T., 10/17/05, at 4.

lant asked that all statements he made, all tests performed upon him, and any physical evidence obtained from him be suppressed.

¶ 3 Following a suppression hearing on August 30, 2005, at which time the suppression court heard testimony regarding Appellant's Omnibus Pre–Trial Motion as well as that filed by his co-defendant, David Gagne, the suppression court entered an Order in which it denied Appellant's Writ of *Habeas Corpus* and Motion to Suppress. At that hearing, Mr. Alex Mederiros testified he lives on 1279 East Poplar Street, York, Pennsylvania, and was home around midnight on the evening of March 26, 2005, at which time he heard a car crash near his fence. N.T., 8/30/05, at 4,7. When he went outside to investigate, Mr. Mederiros saw a Chevrolet Lumina had crashed into a tree[4] and noticed a white or Hispanic male standing outside of the vehicle who was dressed in a black, hooded sweatshirt and jeans. N.T., 8/30/05, at 4–5, 8. The individual was facing the vehicle and standing towards its front on the driver's side. N.T., 8/30/05, at 5. Mr. Mederiros was approximately four feet away from the vehicle when he observed the man and witnessed him run away from the scene. N.T., 8/30/05, at 5–6. Mr. Mederiros was able to identify a suspect less than one hour after the accident. N.T., 8/30/05, at 6.

¶ 4 Officer Jack L. Graybill testified he was employed with the Spring Garden Township Police Department on March 26, 2005, when he received a dispatch to the 200 Block of South Harrison Street at approximately 11:49 p.m. N.T., 8/30/05, at 11–12. Officer Graybill arrived at the scene approximately one minute later and observed a red, Chevrolet Lumina which had struck a utility pole and become entangled in some wires. N.T., 8/30/05, at 12. Upon investigation, Officer Graybill discovered the vehicle had been registered to Appellant and that Appellant's residence was nearby. N.T., 8/30/05, at 13.

¶ 5 Mr. Mederiros provided Officer Graybill a description of the man he had observed at the scene, and Officer Graybill relayed that description over the radio. N.T., 8/30/05, at 13. A second officer, Officer Lightener, went to Appellant's home and discovered he was not there. N.T., 8/30/05, at 13.

¶ 6 Officer Robert Lusk heard the information on his radio just after he had completed his shift and informed Officer Graybill he observed two individuals walking in an area between the scene of the accident and Appellant's residence. N.T., 8/30/05, at 13, 15. Officer Graybill proceeded to the area in a marked, police vehicle, at which time an anonymous witness told him he had seen two men run from the scene of the accident. N.T., 8/30/05, at 14. Officer Graybill then noticed two individuals watch him approach and saw them subsequently flee into a wooded area. N.T., 8/30/05, at 15. Officer Graybill followed one individual, and Officer Lusk pursued the other. N.T., 8/30/05, at 15. When Officer Graybill apprehended his suspect, he recognized him immediately to be Appellant, who was wearing a black, hooded sweatshirt and blue jeans and lying in some bushes. N.T., 8/30/05, at 16.

¶ 7 Appellant was unable to liberate himself from the brush independently, and Officer Graybill had to help him stand upright. N.T., 8/30/05, at 16. Officer Graybill observed signs of intoxication in Appellant's eyes, his mannerisms, and his

---

4. Officer Graybill testified the car had struck a utility pole and other references to the crash in the record indicate the car hit a utility pole.

instability; he also could smell the odor of alcohol emanating from Appellant's person. N.T., 8/30/05, at 17.

¶ 8 Officer Graybill informed Appellant he was not under arrest but was being detained. N.T., 8/30/05, at 17. When Appellant protested, Officer Graybill informed Appellant he was intoxicated in public and possibly involved in a crime. N.T., 8/30/05, at 17. Officer Graybill placed Appellant in handcuffs and as the pair walked to the police cruiser, Appellant had difficulty navigating over the tree stumps. N.T., 8/30/05, at 17. Before placing Appellant in the vehicle, Officer Graybill performed a pat-down of Appellant to make sure he did not possess any weapons. N.T., 8/30/05, at 18. Officer Graybill discovered the keys to the Chevrolet Lumina in Appellant's pocket. N.T., 8/30/05, at 18.

¶ 9 Officer Lightener brought Mr. Mederiros to the scene and the latter identified Appellant as the individual he observed flee from the vehicle and whom he believed was its driver. N.T., 8/30/05, at 18–19. Officer Graybill provided Appellant with his *Miranda*[5] warnings, after which Appellant indicated that he could not be arrested for drinking and driving, because he had consumed whiskey in the field after the accident and had thrown the bottle so Officer Graybill could not find it. N.T., 8/30/05, at 19. Officer Graybill inferred from this statement that Appellant was driving the vehicle but he did not believe Officer Graybill could prove as much, in light of his claim he drove after the accident. N.T., 8/30/05, at 19.

¶ 10 When Officer Graybill informed him he could still be found guilty of DUI under the new law, Appellant responded that "derogatory term for African–Americans" had stolen his car, though he refused to explain how he had retrieved his car

keys. N.T., 8/30/05, at 19–20. Appellant's blood alcohol content was .170 percent that evening. N.T., 8/30/05, at 20.

¶ 11 Officer Robert Lusk testified he was on plain clothes detail on March 26, 2005, and heading home after his shift had ended when he heard Officer Graybill's information regarding a male with a black sweatshirt and blue jeans. As he was in the area, Officer Lusk advised he would investigate. N.T., 8/30/05, at 25–26. Officer Lusk observed an individual matching the description walking with another. N.T., 8/30/05, at 26. When Officer Lusk first turned onto Prospect Street, the individuals started to run, but then stopped, perhaps when they noticed Officer Lusk was not driving a police cruiser. N.T., 8/30/05, at 27. Officer Lusk radioed Officer Graybill and the latter arrived within the minute. N.T., 8/30/05, at 27. Officer Lusk apprehended Appellant's co-defendant and noticed the odor of alcohol on his person. N.T., 8/30/05, at 28.

¶ 12 After hearing argument from both parties, the suppression court summarized the testimony and denied Appellant's motion to suppress the evidence as well as any statements or testing. The suppression court also found that it was appropriate for Mr. Mederiros to be brought to the scene to identify Appellant and that the pat-down was necessary for the officers' safety, as Appellant was going to be placed in the police vehicle. N.T., 8/30/05, at 44. Finally, the suppression court stated that given Appellant was halfway between his home and the accident, that the car was registered in his name, and that he was wearing the clothing Mr. Mederiros identified when he saw Appellant in front of the crashed vehicle, it was reasonable for Officer Graybill to "suspect and then verify

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

that [Appellant] was indeed the driver." N.T., 8/30/05, at 44–45.

¶ 13 On September 17, 2005, Appellant waived his right to a jury trial. N.T., 9/17/05, at 3. After reviewing the evidence entered into the record, which included the police report, the transcript of the August 30, 2005, hearing, and the report of the Alcohol Department of Laboratory Services which indicated Appellant's blood-alcohol level was .170 percent, the trial court found Appellant had been operating a motor vehicle on March 26, 2005, at approximately 11:40 p.m., at which time his vehicle struck a utility pole. N.T., 9/17/05, at 3–5. The trial court acknowledged Appellant's BAC of .170 percent was greater than the tier level allowed of .16 percent or higher and found him guilty of "driving under the influence, blood-alcohol content." N.T., 9/17/05, at 5. In addition, after considering that his vehicle struck a utility pole, the trial court also determined Appellant was guilty of careless driving. N.T., 9/17/05, at 5.

¶ 14 On October 17, 2005, after it was established Appellant had been found guilty of a second offense, third tier, Appellant was sentenced to ninety (90) days to five (5) years in prison, required to pay a $1,500 fine and the costs of prosecution, obligated to surrender his driver's license and required to complete the alcohol highway safety school. N.T., 10/17/05, at 3. Appellant was also ordered to undergo a comprehensive, alcohol assessment and follow through with any and all recommendations. N.T., 10/17/05, at 3.

¶ 15 On November 15, 2005, Appellant filed a timely notice of appeal.[6]

¶ 16 On November 23, 2005, Appellant filed a "Statement of Matters Complained of Pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure"[7] and in response to the trial court's having ordered Appellant to supply a Pa.R.A.P. 1925(b) statement of matters complained of on appeal.

¶ 17 In his Appellate Brief, Appellant raises the following issues for our consideration:

I. Whether the honorable trial court erred in denying the Appellant's Writ of *Habeas Corpus* in that:

A. The Commonwealth did not establish [Appellant] as the one operating the vehicle;

B. No witnesses observed or identified [Appellant] operating the vehicle;

C. The Commonwealth did not establish a *Corpus Delicti* for the charge of driving under the influence and/or the accompanying summary offense.

II. Whether the honorable trial court erred in denying [Appellant's] Motion to Suppress in that:

A. Officer Graybill did not have probable cause to believe that [Appellant] was operating a motor vehicle while under the influence;

B. At the time of arrest, Officer Graybill lacked sufficient probable cause to effectuate a legal arrest of [Appellant's] person;

C. The arrest by Officer Graybill was illegal.

¶ 18 We will discuss these issues in turn.

**6.** On November 29, 2005, the sentencing court Ordered that Appellant shall be permitted to remain free on bail as previously set pending his appeal to this Court and/or the Supreme Court of Pennsylvania.

**7.** Pa.R.A.P.1925(b)

¶ 19 Our standard of review for a grant of a *habeas corpus* petition is as follows:

> The decision to grant or deny a petition for writ of [*habeas corpus*] will be reversed on appeal only for a manifest abuse of discretion.... Our scope of review is limited to deciding whether a *prima facie* case was established.... [T]he Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury. When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.

*Commonwealth v. James*, 863 A.2d 1179, 1181–1182 (Pa.Super.2004) (*en banc*) (citations omitted).

¶ 20 Herein, Appellant was convicted of driving under the influence of alcohol, highest rate of alcohol, which provides:

> [a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(c).

¶ 21 Appellant was also found guilty of Careless Driving which provides that "[a]ny person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714.

¶ 22 The term "operate" necessitates evidence of actual, physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but does not require evidence that the vehicle was in motion. *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa.Super.2003). Under Pennsylvania law, an eyewitness is not required to establish one was driving, operating, or in actual physical control of a motor vehicle, but, rather, the Commonwealth may establish the same through wholly circumstantial evidence. *Id.* " 'Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle.' " *Commonwealth v. Brotherson*, 888 A.2d 901, 904 (Pa.Super.2005) (*citing Commonwealth v. Woodruff*, 447 Pa.Super. 222, 668 A.2d 1158, 1161 (1995)). In addition, when the location of the vehicle supports an inference that it was driven, this inference will serve as a key factor in a finding of actual control; conversely, where the location of a vehicle supports an inference that it was not driven, this Court has rejected the inference of actual control. *Brotherson*, 888 A.2d at 905. In *Brotherson*, we determined that "[t]he highly inappropriate location of the car—on the basketball court of a gated children's playground—created a strong inference that it was an already intoxicated [a]ppellant who had driven the car to that spot." *Id.*

¶ 23 The Commonwealth may sustain its burden of proving every element of the charged crimes beyond a reasonable doubt by means of wholly circumstantial

evidence. *Johnson,* 833 A.2d at 263. In *Johnson,* this Court determined that where two cars had been involved in an accident and one car was registered in the appellant's name and the police arriving on the scene noticed the appellant leaning against the driver's side door, a reasonable inference could be drawn that the appellant had driven the vehicle to that location. *Id.* The evidence revealed that the police arrived at the scene of the accident shortly after it happened and saw the occupants of the other vehicle still sitting inside. As the only other person at the scene was the appellant, we determined "[t]he inference that [the a]ppellant drove his vehicle to the accident scene is strongly supported by the fact that shortly after the accident, [the a]ppellant was found leaning against the driver's side door of his vehicle which had just been involved in an accident." *Id.* at 264. We rejected the appellant's speculation that another person may have been driving his car, and reasoned that "[t]aken to its ultimate conclusion, [the a]ppellant's argument is that when a driver involved in a motor vehicle accident gets out of the vehicle before the police arrives (sic) and before anyone else could see him, the driver cannot be convicted of any crimes associated with, or resulting from[,] the accident. This proposition has no basis in Pennsylvania Law." *Id.*

¶ 24 After a lengthy discussion of the evolution of 75 Pa.C.S.A. § 3731 [8] and the legislature's intent in utilizing specific terms in each amendment to the statutory language, we also determined that the Commonwealth had presented a *prima facie* case that a defendant had actual, physical control of his vehicle where the evidence was uncontested that he revved its engine, engaged it in reverse and moved it halfway off of a tow truck's lift. *Common-*

*wealth v. James,* 863 A.2d 1179, 1184 (Pa.Super.2004). In reaching this determination, we stated the following:

> It is well settled that in order to be convicted under this statute, the Commonwealth need not prove that the vehicle was in motion at the time of the incident, but rather, must simply prove that the defendant was in actual physical control over the vehicle, and was, thus, a threat to public safety. The concept of 'actual physical control' involves the control of the movements of either the machinery of a motor vehicle or of the management of the vehicle itself, without a requirement that the entire vehicle be in motion.

*Id.* (citations omitted).

¶ 25 As a result, we also concluded that the trial court abused its discretion when it granted the defendant *habeas corpus* relief. *Id.* at 1185.

¶ 26 Appellant contends the trial court erred in denying Appellant's Writ of *Habeas Corpus* because the Commonwealth failed to establish Appellant had operated the Chevrolet Lumina, as no one witnessed him actually driving the vehicle. In light of *Johnson and Brotherson, supra,* this argument is without merit. Herein, Mr. Mederiros observed Appellant standing near the driver's side door moments after the crash and provided Officer Graybill with a description of his clothing when the latter arrived within a minute after being dispatched. Upon investigation, Officer Graybill discovered the vehicle was registered to Appellant and retrieved the keys to the vehicle from his pocket. In addition, Appellant attempted to evade Officers Graybill and Lusk. Also, the placement of the car certainly indicated it had been driven, and Appellant's posses-

---

8. The Pennsylvania Legislature repealed Section 3731 on September 30, 2003, P.L. 120, No. 24 § 14, effective February 1, 2004. The new DUI statute is 75 Pa.C.S.A. § 3802.

sion of the keys indicates Appellant had driven it there and retained control over the vehicle. As such, the Commonwealth provided ample circumstantial evidence to establish Appellant was driving the vehicle when it struck the utility pole.

¶ 27 The final aspect of Appellant's Writ of *Habeas Corpus* Motion concerns his contention that the Commonwealth failed to establish a *corpus delicti* for the charge of driving under the influence of alcohol and/or careless driving.

The *corpus delicti* rule is designed to guard against the 'hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.' The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's *admission* of the accused's statements and the second step concerns the fact finder's *consideration* of those state-

ments. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

*Commonwealth v. Rivera*, 828 A.2d 1094, 1103–1104, n. 10 (Pa.Super.2003) *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004) (citations omitted) (emphasis in original).

¶ 28 In his brief, Appellant claims the Commonwealth cannot establish the *corpus delicti* by his "implied confession" in that such a confession was erroneously admitted into evidence because the charged crimes had not first been established by independent proof. Brief for Appellant, at 11. Under the *corpus delicti* rule, the Commonwealth was required to show, either through direct or circumstantial evidence, that Appellant drove or operated his vehicle while under the influence of alcohol. Only if the Commonwealth could establish these facts was admission and consideration of Appellant's implicit confession proper. *Rivera*, 828 A.2d at 1104.

¶ 29 As we have discussed, *supra*, the Commonwealth presented evidence that a car registered to Appellant and whose keys were in his pocket was crashed into a utility pole near his home. Appellant was identified by an eyewitness as the individual standing on the driver's side of the vehicle just after impact, and attempted to flee the scene. When Officer Graybill apprehended Appellant, he believed his eyes and mannerisms along with his inability to stand independently, evidenced he was intoxicated. These facts tend to establish that Appellant carelessly drove the Chevrolet Lumina while intoxicated. Thus, we conclude that the Commonwealth established the *corpus delicti* beyond a reason-

able doubt; Appellant's implied confession was admissible and the trial court properly could have considered it in reaching its verdict.[9]

¶ 30 When reviewing a trial court's denial of a suppression motion, this Court is bound by the following standard:

> [An appellate court's] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa.Super.2006) (*citing Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted in original)).

¶ 31 A police officer may detain an individual in order to conduct an investigation where that officer reasonably suspects the individual is engaging in criminal conduct. *Commonwealth v. Conrad*, 892 A.2d 826, 829 (Pa.Super.2006) (*citing Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 676 (1999)). This standard, known as reasonable suspicion, is less stringent than probable cause. *Id.*

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give 'due weight... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.' Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, 'even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.'

*Conrad*, 892 A.2d at 829 (citations omitted).

¶ 32 In determining whether probable cause to make an arrest exists in a given situation, this Court will consider the totality of the circumstances presented to the police officer and not concentrate on each, individual element. *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa.Super.2005). Moreover, it is within the province of the trial judge, who had the opportunity to observe the witnesses' credibility, to determine the weight to be accorded their testimony. *Commonwealth v. Gallagher*, 896 A.2d 583, 584–585 (Pa.Super.2006).

¶ 33 In considering whether the trial court erred in denying Appellant's Motion to Suppress, we note that Officer Graybill had observed two individuals running into the woods as he turned into the street where Officer Lusk had been. Officer Graybill immediately recognized Appellant and noted he was wearing a black, hooded sweatshirt and blue jeans—the apparel Mr. Mederiros said he saw the man

---

**9.** Even were this not the case, Appellant had received his *Miranda* warnings prior to making the statements regarding his drinking that evening to Officer Graybill, and Appellant voluntarily explained the reasoning behind his

belief he could not be convicted of driving under the influence of alcohol. Thus, his statements were admissible. *See Commonwealth v. Ogrod*, 576 Pa. 412, 456, 839 A.2d 294, 320 (2003).

standing outside the crashed vehicle wearing. Officer Graybill smelled the odor of alcohol on Appellant's person and had to assist him in getting up from a prone position in the thicket. In addition, Appellant admitted to having drunk alcoholic beverages, though he claimed to have done so after the impact. Finally, Appellant indicated someone had stolen his car, but offered no explanation for his possession of the keys. Taken together, we find these facts provided reasonable suspicion for Officer Graybill to believe Appellant had been driving his Chevrolet Lumina while under the influence of alcohol and was incapable of safe driving in violation of 75 Pa.C.S.A. § 3802 and to be detained in order to determine whether he had been involved in a crime.

¶ 34 In light of his attempt to flee, Appellant was handcuffed and placed in Officer Graybill's patrol car. For officer safety, Officer Graybill patted down Appellant at which time he discovered the keys to the crashed vehicle. Shortly thereafter, Mr. Mederiros identified Appellant as the man he saw at the scene of the accident. These factors taken together provided Officer Graybill with probable cause to arrest Appellant, and at that time, he also provided Appellant with his *Miranda* warnings. In light of the foregoing, we find the trial court did not err in denying Appellant's Motion to Suppress.

¶ 35 Judgment of sentence affirmed.

¶ 36 POPOVICH, J. CONCURS IN RESULT.