J-S35042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN VESLY FOREUS | : | |
| | : | |
| Appellant | : | No. 161 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 13, 2023
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0000600-2020

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.:                **FILED: OCTOBER 10, 2024**

Appellant, John Vesly Foreus, appeals from the judgment of sentence entered in the Franklin County Court of Common Pleas, following his jury trial convictions for conspiracy to commit burglary, terroristic threats, and simple assault.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Chambersburg Police identified Appellant as one of four individuals present at the scene of an attempted burglary in the area of Lincoln Way West on May 7, 2020.  The four individuals attempted forcible entry into the home of Frislet Joseph, threatened him in an attempt to force him from the home, and fired gunshots at the home.

In the early morning hours of May 8, 2020, police transported Appellant

---

[1] 18 Pa.C.S.A. §§ 903, 2706(a)(1), and 2701(a)(3), respectively.

to the Chambersburg Police Department, where he spoke to Corporal James Iverson. Corporal Iverson had previously interacted with Appellant in the community, as well as received Appellant's assistance and information in multiple past criminal incidents. These incidents involved individuals whom Appellant, a Haitian immigrant who has lived in this country for at least sixteen years, knew from the local community. During those interactions, Corporal Iverson did not require an interpreter to converse with Appellant, who spoke conversational English, although Creole is his first language.

Appellant had an unrecorded conversation with Corporal Iverson at the police station which continued as they walked towards the interview room. Initially, Corporal Iverson did not tell Appellant the purpose of the interview, but asked if he was aware of the attempted burglary. Corporal Iverson asked Appellant whether he had any issues speaking to him about what had occurred on Lincoln Way West, or what had occurred earlier, and Appellant stated that he did not. Corporal Iverson began to record the subsequent interview, during which Appellant was advised of his **Miranda**[2] rights, signed a waiver, declined the services of an interpreter, and answered questions regarding the incident. During this interview, Appellant admitted his participation in the crimes and stated that he and his cousin carried machetes when they went to the victim's house. Following the interview, police arrested Appellant, and on June 10, 2020, the Commonwealth charged Appellant with the above-mentioned

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

crimes.

On July 29, 2022, Appellant filed a motion to suppress all statements made to police during his detention, arguing that his waiver of his ***Miranda*** rights was invalid because he was not informed of the crime being investigated prior to executing a written waiver, and that his waiver was not knowing and intelligent because his primary language is Haitian Creole. The Commonwealth filed a response in opposition to the motion. The court held a suppression hearing on October 6, 2022. Following the hearing, the court entered an order granting in part and denying in part Appellant's motion. Specifically, the trial court suppressed statements made in the hallway and prior to the timestamp 4:16:08 a.m. on the recording of the interview, when the Corporal had expressly informed Appellant that police were conducting the interview in reference to a burglary in which shots were fired. The court denied the remainder of the suppression motion.

The matter proceeded to trial, and on July 20, 2023, a jury convicted Appellant of the aforementioned charges. On September 13, 2023, the trial court sentenced Appellant to an aggregate term of 27 to 60 months' incarceration. Both Appellant and the Commonwealth timely filed post-sentence motions. The court held a hearing on the post-sentence motions on October 27, 2023. On December 29, 2023, the trial court denied the post-sentence motions.

On January 26, 2024, Appellant timely filed a notice of appeal. That same day, the trial court ordered Appellant to file a concise statement of errors

complained of on appeal pursuant to Pa.R.A.P. 1925(b). On February 16, 2024, Appellant complied with the order.

On appeal, Appellant raises the following issues for our review:

> 1. Did the trial court err in denying Appellant's Motion to Suppress his statement to police due to an unknowing and unintelligent waiver of his **Miranda** rights due to Appellant's language barrier as well as the law enforcement officer failing to advise Appellant of the crime being investigated?
>
> 2. Did the trial court abuse its discretion when it found that a deadly weapon enhancement was applicable and further when it sentenced Appellant to an aggregate sentence of 27 to 60 months in a State Correctional Institution?
>
> 3. Was it error for the trial court to allow the Commonwealth to admit hearsay evidence through the testimony of several different law enforcement officers, under the guise of a course of conduct exception, in violation of Appellant's rights under the Confrontation Clause of the U.S. Constitution and the Pennsylvania Constitution?
>
> 4. Did the trial court err when it denied Appellant's Motion for Judgment of Acquittal due to a deficiency in the Bill of Information charging Appellant with Conspiracy to Commit Burglary?
>
> 5. Did the trial court err when it considered the application of the *corpus delicti* rule both when it admitted Appellant's statement into evidence and further when it denied Appellant's Motion for Directed Verdict and allowed the jury to consider Appellant's statement when determining a verdict?

(Appellant's Brief at 11-12).

In Appellant's first issue, he argues that the trial court erred in denying his motion to suppress. Appellant contends that his waiver of **Miranda** was invalid for two reasons. First, Appellant argues that at the time Corporal

Iverson informed Appellant of his **Miranda** rights, he failed to inform Appellant of the matter that was being investigated, resulting in an invalid waiver of rights. Second, Appellant contends that Corporal Iverson was aware that Appellant's primary language is Haitian Creole, not English, and that to obtain a valid waiver of Appellant's rights, he should have been provided with either an interpreter or with the waiver form in his primary language. Appellant concludes that his **Miranda** waiver was not knowingly, intelligently, or voluntarily made, and that the court should have granted his suppression motion in its entirety. We disagree.

> Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Rosario**, 248 A.3d 599, 607 (Pa.Super. 2021). We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions *de novo*. **Id.** at 607-08. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. **Id.** at 608. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant." **Commonwealth v. Kane**, 210 A.3d 324, 329 (Pa.Super. 2019).

**Commonwealth v. Rivera**, 316 A.3d 1026, 1031 (Pa.Super. 2024).

Generally, statements made during a custodial interrogation are presumptively involuntary, unless the police first inform the accused of his **Miranda** rights. **Commonwealth v. DiStefano**, 782 A.2d 574, 579 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002).

- 5 -

"Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" **Commonwealth v. Williams**, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*) (internal citations omitted) (quoting **Miranda, supra** at 444, 86 S.Ct at 1612).

"[T]he **Miranda** safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." **Commonwealth v. Gaul**, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). "[I]n evaluating whether **Miranda** warnings were necessary, a court must consider the totality of the circumstances." **Id.** Where a defendant challenges the admission of a statement made during a custodial interrogation,

> the Commonwealth bears the burden to prove by a preponderance of the evidence that the defendant's **Miranda** waiver was knowing, intelligent, and voluntary. We engage in a two-part inquiry:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived.
>
> An examination of the totality of the circumstances includes a consideration of (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the

- 6 -

detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion.

*Commonwealth v. Smith*, 210 A.3d 1050, 1058 (Pa.Super. 2019), *appeal denied*, 655 Pa. 585, 218 A.3d 1199 (2019) (citations, internal quotation marks, and brackets omitted).

Instantly, the trial court explained:

Corporal Iverson testified that prior to the recorded interview there was a brief interaction in the hallway in which he did not state the purpose of the interview; however, he asked [Appellant] if he had any issues speaking with him about what happened earlier. When he referenced an incident on Lincoln Way West[,] Corporal Iverson testified [Appellant] didn't appear to question what was being asked of him and responded in the nature of saying "no problem" or "sure."

Corporal Iverson placed the *Miranda* Rights Warning and Waiver [("Waiver")] in front of [Appellant] and had him read the document out loud. Upon executing the waiver, Corporal Iverson proceeded to describe a gunshot residue [("GSR")] test, explaining he would run it across [Appellant's] hand and that he was not collecting [Appellant's] DNA. Then a brief conversation ensues, all words not entirely clear to the [c]ourt on the video exhibit, about whether [Appellant] shot anything or carries a gun. As Corporal Iverson goes to open the packet for the GSR testing the following dialogue occurs:

CORPORAL IVERSON: And just so we are aware, before we get into this, I forgot to advise you when we went over that form. Alright. This is in reference to a burglary in which shots were fired. So somebody broke into somebody's house and then gunshots were fired. Ok, so that is why I want to go ahead and just try that. So with that being said.

[APPELLANT]: Go ahead and do it.

- 7 -

CORPORAL IVERSON: I got you. But hold on. With that being said, you understand everything on that form[.]

[APPELLANT]: Sure[.]

CORPORAL IVERSON: And you are willing to talk about a burglary with shots being fired?

[APPELLANT]: Yes.

CORPORAL IVERSON: Cool. And you do not need an interpreter here for any reason?

[APPELLANT]: No.

… At the time [Appellant] read and signed the waiver, the only prior conversation, unrecorded and in the hallway, consisted of asking [Appellant] if he had an issue talking about what happened earlier on Lincoln Way West in which [Appellant] responded he had no problem. The mere fact [that] Corporal Iverson halts commencement of the GSR testing to provide more explicit information is the strongest evidence that further clarity was appropriate, at a minimum in the mind of Corporal Iverson. However, the analysis does not stop here as the additional evidence before us shows that Corporal Iverson rehabilitated any possible deficiency in informing [Appellant] of the circumstances of the interrogation, including the location of the incident, the crime being investigated, describing the crime in everyday terms, and then referencing the Waiver and confirming [Appellant] understood everything on the form and that [Appellant] was satisfied with talking. When [Appellant] appeared to brush off the information, Corporal Iverson told him to hold on and proceeded to confirm his understanding and willingness to talk. In addressing the fact that [Appellant] signed the Waiver before further information was provided by Corporal Iverson, we note that the Pennsylvania Supreme Court has held that lawful waiver of *Miranda* rights "requires only that the waiver of rights be made voluntarily, knowingly, and intelligently, and not that it be made in writing." While a writing exists, so does a subsequent conversation in which we find [Appellant] knowingly waived his rights.

> We further note [Appellant] was placed in the interrogation room and his handcuffs were removed. Corporal Iverson spoke to [Appellant] respectfully and calmly; no hostility was displayed. [Appellant] was not interrogated for an unreasonable amount of time and did not appear to be in any physical or psychological distress during the interrogation.

(Trial Court Opinion, 2/15/23, at 4-7) (internal citations omitted).

The record supports the court's analysis. Corporal Iverson testified regarding his familiarity with Appellant, including his proficiency in English and the fact that an interpreter had never been needed for their prior conversations. (**See** N.T. Suppression Hearing, 10/6/22, at 6-7). During this particular encounter, Appellant declined a need for an interpreter and at no point indicated that he misunderstood Corporal Iverson or required the use of an interpreter. (**See id.** at 8-9). Nothing in the record indicates that Appellant did not understand the waiver form or the rights he was giving up. **See Smith, supra**.

Additionally, the court granted Appellant's suppression motion in part, suppressing any statements Appellant made prior to the Corporal's express statements explaining the crime being investigated and prior to conducting the GSR test. Thus, Appellant confirmed his waiver of **Miranda** after the Corporal made him aware of the burglary being investigated. (**See id.** at 10-26). **See also Commonwealth v. O'Bryant**, 479 Pa. 534, 388 A.2d 1059 (1978), *cert. denied*, 439 U.S. 990, 99 S.Ct. 589, 58 L.Ed.2d 664 (1978) (noting that **Miranda** requires only that waiver be made voluntarily,

knowingly, and intelligently, and not necessarily made in writing). As the trial court reasoned, the Corporal's explanation and follow-up questions after Appellant signed the **Miranda** form cured any issue regarding Appellant's knowledge of the crimes at issue. On this record, we see no reason to disrupt the court's conclusion that Appellant's **Miranda** waiver was knowing, intelligent and voluntary. **See Rivera, supra**. Thus, Appellant's first issue merits no relief.

In Appellant's second issue, he argues that the court abused its discretion when it found that a deadly weapon enhancement was applicable, and when it sentenced Appellant to 27 to 60 months of incarceration in a state correctional institution. Specifically, Appellant contends the court did not give appropriate consideration to mitigating factors at sentencing and focused solely on the seriousness of the crime. Appellant maintains the court incorrectly believed that it was constrained by the standard guideline range and required to impose a punitive sentence. Further, Appellant insists that there was insufficient evidence in the record to support the application of the deadly weapon possessed enhancement.

As presented, Appellant's issue challenges the discretionary aspects of sentencing. **See Commonwealth v. Clarke**, 70 A.3d 1281 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 481 (2014) (stating contention that court focused solely on serious nature of crime without adequately considering protection of public or defendant's rehabilitative needs concerns court's sentencing discretion); **Commonwealth v. Disalvo**, 70 A.3d 900 (Pa.Super.

2013) (explaining claim that court failed to consider certain mitigating factors is challenge to discretionary aspects of appellant's sentence). **See also Commonwealth v. Shull**, 148 A.3d 820 (Pa.Super. 2016) (noting challenge to application of deadly weapon enhancement implicates discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." **Commonwealth v. Perzel**, 291 A.3d 38, 46 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 301 A.3d 426 (2023). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a

- 11 -

substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Troell*, 290 A.3d 296, 299 (Pa.Super. 2023).

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10

- 12 -

(Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005).  "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Id.***

> ... Where the sentencing court had the benefit of a [pre-sentence investigation ("PSI") report], we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). ***See also Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors).

***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010).

Further, the Sentencing Code provides that where the court determines that "the offender possessed a deadly weapon during the commission of the current conviction offense," the court shall consider the Deadly Weapon Enhancement/Possessed Matrix. ***See*** 204 Pa.Code § 303.10.  An offender has possessed a deadly weapon if he had on his person or within his immediate physical control "any dangerous weapon (as defined in 18 Pa.C.S.A. § 913)"[3]

---

[3] Section 913 defines a dangerous weapon as follows:

> A bomb, any explosive or incendiary device or material when possessed with intent to use or to provide such material to commit any offense, graded as a misdemeanor of the third degree or higher, grenade, blackjack, sandbag, metal knuckles, dagger, knife (the blade of which is exposed in an automatic way by switch, push-button, spring

*(Footnote Continued Next Page)*

or "any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual." *See* 204 Pa.Code § 303.10(a)(1)(ii)-(iii). The burden of proof in determining whether the deadly weapon enhancement applies is a preponderance of the evidence. *Commonwealth v. Ellis*, 700 A.2d 948, 959 (Pa.Super. 1997), *appeal denied*, 556 Pa. 671, 727 A.2d 127 (1998).

Instantly, Appellant timely filed his notice of appeal, preserved his claim in a timely post-sentence motion, and included in his appellate brief the requisite Rule 2119(f) statement. Further, Appellant has raised a substantial question for our review. *See Clarke, supra* at 1287 (observing that claim trial court focused solely on serious nature of offense, without considering protection of public or rehabilitative needs of defendant, presents substantial question). *See also Commonwealth v. Raybuck*, 915 A.2d 125, 127-28 (Pa.Super. 2006) (noting that challenge to application of deadly weapon enhancement presents substantial question). Thus, we proceed to address the merits of Appellant's sentencing issue.

At sentencing, the court noted that it had reviewed the PSI report, which contained Appellant's criminal history, including a prior simple assault

---

mechanism or otherwise) or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.C.S.A. § 913.

conviction from close to ten years ago, and that the PSI indicated "no rehabilitative needs." (*See* N.T. Sentencing, 9/13/23, at 67-69). Additionally, the trial court noted that the deadly weapon possessed enhancement applied. (*See id.* at 68). The court took note of Appellant's "wish to be a positive impact in the community," and that he had a positive impact in the lives of family members. (*Id.* at 70). The court also acknowledged letters written on Appellant's behalf. (*Id.* at 71). However, the court stated that it could not "look away from the fact that you have been found guilty of the two crimes" with which he was charged. (*Id.*) The court then stated that it would impose a sentence on the lower end of the standard range in light of the aforementioned considerations. (*Id.*)

Regarding application of the deadly weapon enhancement, Appellant admitted in his statement to police that he carried a machete during the commission of the crime.[4] (*See* N.T. Trial, 7/19/23, at 73-76). Further, the record demonstrates that the court imposed a standard range sentence, with the benefit of a PSI report, and expressly considered any mitigating factors contained therein. *See Tirado, supra*. On this record, we cannot say that the court abused its sentencing discretion. *See McNabb, supra*. Thus, Appellant's second issue on appeal merits no relief.

In Appellant's third issue, he challenges several evidentiary rulings of

---

[4] Appellant does not dispute that a machete fits the definition of a deadly weapon, only that the evidence did not prove that he possessed one during the commission of the crime.

the trial court, contending that the court erroneously admitted hearsay evidence under the guise of a course of conduct exception. Appellant argues that the Commonwealth failed to present the testimony of the victim at trial, and it improperly attempted to present his statements through hearsay evidence offered by several different law enforcement officers. Appellant insists that his constitutional rights under the Confrontation Clause were violated as a result, and that this Court should grant relief. We disagree.

As a preliminary matter, issues not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005). A Rule 1925(b) statement that is not specific enough for the trial court to identify and address the issues the defendant wishes to raise on appeal may also result in waiver. *Commonwealth v. Reeves*, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Id.* at 2.

Here, the trial court suggests that Appellant's third issue is waived due to lack of specificity because it challenges the testimony of "several different

law enforcement officers." (Trial Court Opinion, 3/21/24, at 3-4). The trial court states that it "hunt[ed] the transcripts of five law enforcement officers over a three-day period for possible testimony that [Appellant] may be complaining of." (*See id.* at 4). Additionally, the trial court noted the numerous objections made on Appellant's behalf and extensive sidebar argument upon those objections. (*See id.*) While Appellant's statement narrows the issue to "**victim's statements** via hearsay evidence offered by law enforcement witnesses," at trial, his argument was that "their actions and what they did are based upon hearsay statements, based upon information received from **other** sources." (*Id.*) (emphasis in original). Thus, the trial court concluded that this issue was phrased in the concise statement without sufficient specificity. Nevertheless, the court responded to several instances where an officer's testimony was admitted over objection.

We agree with the trial court that Appellant's Rule 1925(b) statement was too vague to preserve this issue for review. *See Reeves, supra*. Nevertheless, even if not waived, Appellant's issue is without merit.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the

evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied,* 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied,* 633 Pa. 787, 128 A.3d 220 (2015).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal quotation marks omitted).

"[H]earsay is an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." *Commonwealth v. Manivannan*, 186 A.3d 472, 482 (Pa.Super. 2018) (citation omitted); Pa.R.E. 801(c).

Pennsylvania's hearsay rule explains that hearsay is a statement that: "(1) the declarant [did] not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2). The Rule defines a "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as

- 18 -

an assertion," and a "declarant" is "the person who made the statement." *Id.* at 801(a)-(b).

*Commonwealth v. Vance*, 316 A.3d 183, 189 (Pa.Super. 2024) (emphasis omitted).  Regarding the "course of conduct" exception to the hearsay rule,

> [it] applies when a witness offers a statement to explain his or her actions. *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1017 (2007).  However, it is often not necessary for a witness to provide full and explicit statements to explain course of conduct behavior. *See*, *e.g.*, *Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808, 811 (1989) ("[T]he police easily could have explained the course of their conduct ... without resorting to the full and explicit statements given by [the informant]."). Moreover, the course of conduct exception is not a license to admit any and all statements that may have impacted the witness's course of conduct. *See id.* ("[T]here is often a subtle, and elusive, difference between the use of statements to establish the truth of facts averred by one not in court and their use to establish a course of conduct[.]").

*Vance, supra*, 316 A.3d at 94 n. 10.  *See also Commonwealth v. Goldman*, 252 A.3d 668, 679 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 375 (2021) (explaining that officer's testimony regarding contents of dispatch call which led officer to drive to location to respond to crime, and come in contact with defendant, is not hearsay under course of conduct exception).

Here, Appellant identifies on appeal specific instances of officers' testimony which he asserts the court admitted in error.[5]  According to

_____

[5] Officer Eric McGinnis testified that he responded to the location on Lincoln Way West because officers were dispatched "for a report of home invasion with shots fired," and that "we responded to a shots fired call and there was shots that were fired through curtains hanging inside the apartment, as well
*(Footnote Continued Next Page)*

- 19 -

Appellant, the officers had no personal knowledge that they were responding to a home invasion or a burglary, and that they could just as easily have explained their "course of conduct" by indicating that they had received a call to the address. Appellant insists that the testimony from law enforcement constituted evidence presented in the form of oblique narratives relating to the course of police investigation, which would allow the jury to "accept third-party declarations as substantive evidence of guilt without giving the defendant an opportunity to cross-examine the declarant." (Appellant's Brief at 47) (citing **Commonwealth v. Dent**, 837 A.2d 571 (Pa.Super. 2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004)).

Nevertheless, **Dent** is inapposite. In **Dent**, the Commonwealth introduced, over objection, statements "in the form of oblique narratives to prove that [the witness], who knew and could reliably identify appellant, accused appellant of committing the crime. As [the witness] himself was not available for cross examination, appellant claims he was prejudiced by not having the opportunity to confront and cross-examine his accuser." **Dent, supra** at 578. Thus, the issue in **Dent** was not that a crime had been committed, but the identity of the perpetrator: the inadmissible statements

---

as a glass window." (N.T. Trial, 7/18/23, at 28, 39). Sergeant Corey Fagan testified that he went to the subject address because of "a 911 call for an active burglary with shots fired." (**Id.** at 96). Corporal Iverson testified that he became involved with the investigation because "there was a home invasion at Lincoln Way West … and shots were fired into the residence." (**Id.** at 140). Finally, Detective Todd Hardin testified that his supervisor requested his presence "for reports of a burglary and a shooting." (**Id.** at 116). (**See also** Appellant's Brief at 46-47).

were admitted in attempts to buttress the in-court identification of appellant, made by the victim, with another reliable out of court identification. *See id.* at 579.

Unlike in *Dent*, the challenged testimony in this case is testimony from police officers indicating that they were responding to reports of a home invasion or burglary with shots fired. Such statements merely explain the course of conduct taken by police in arriving at that address and investigating those reports. *See Goldman, supra*. We cannot conclude that the court abused its discretion by admitting these statements under the course of conduct hearsay exception. *See LeClair, supra*. Thus, even if not waived, Appellant's third issue on appeal would merit no relief.

In Appellant's fourth issue, he contends that the trial court erred when it denied Appellant's motion for a judgment of acquittal, due to a deficiency in the bill of information charging Appellant with conspiracy to commit burglary. Appellant claims that the bill of information must include the elements of the offense and is the basis for the court's charge and the jury's verdict. Appellant asserts that the verdict must conform to the bill of information. Appellant argues that the charge of conspiracy to commit burglary requires that a specific, overt act be committed for a defendant to be found guilty, and that the jury must agree on the specific overt act. Appellant contends that the bill of information is defective because it did not specify the overt act for which Appellant was charged but used boilerplate language to charge conspiracy. Appellant concludes that we should vacate his conviction for this reason. We

disagree.

Our Supreme Court has stated:

> The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. This may be accomplished through use of the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."

*Commonwealth v. Alston*, 539 Pa. 202, 210, 651 A.2d 1092, 1095-1096

(1994) (citations omitted). With regard to criminal informations and due

process concerns:

> [D]ue process requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused, *see* Pa.R.Crim.P. 560(C) (providing that "[t]he information shall contain the ... citation of the statute ... or other provision of law that the defendant is alleged therein to have violated"). To comport with due process, the notice provided must be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial. Such notice ensures that, if the Commonwealth prevails at trial, the defendant's conviction is not arbitrary or oppressive. It is these due process concerns that the proper definition of lesser-included offenses must take into account.

*Commonwealth v. Sims*, 591 Pa. 506, 519-20, 919 A.2d 931, 939-40

(2007) (some citations omitted). The Pennsylvania Rules of Criminal

Procedure provide that a bill of information will be valid and sufficient if it

contains "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint[.]" Pa.R.Crim.P. 560(B)(5). "[I]ndictments and informations are sufficient where the crimes charged are substantially in the language of the statute." *See Commonwealth v. Taraschi*, 475 A.2d 744, 750 (Pa.Super. 1984).

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

A conviction for criminal conspiracy thus requires the Commonwealth to prove that a defendant: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) the defendant or a conspirator did an overt act in furtherance of the conspiracy. *See Commonwealth v. Munson*, 261 A.3d 530, 542 (Pa.Super. 2021). Further,

> [a]n attempt, in general, is an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it. In law, the

definition must have this further qualification, that the overt act must be sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution. So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights, they are within the sphere of intent and do not amount to attempts.

**Commonwealth v. Wojdak**, 502 Pa. 359, 378, 466 A.2d 991, 1001 (1983) (citation omitted).

Instantly, relying on **Commonwealth v. Logan**, 501 A.2d 689 (Pa.Super. 1985), Appellant contends that the criminal information is insufficient. He attempts to equate the situation in **Logan**—where the substitution of a named co-defendant constituted a "different set of events" that could require "materially different defenses" of the accused—with the situation in the instant case. Unlike in **Logan**, the fact that the overt act was not specified in the criminal information would not create a situation requiring a materially different defense.

The information stated:

> … [Appellant], did … with the intent of promoting or facilitating the crime(s) of Burglary, conspire and agree with Jeffrey Leandre, Emerson Seger and/or Dormesly Audath, that they or one or more of them would engage in conduct constituting such crime(s) or an attempt or solicitation to commit such crime(s), and in furtherance thereof an overt act was committed, in violation of Section 903(a)(1) of the Pennsylvania Crimes Code …

**See** Bill of Information, 6/10/20, at 1.

The trial court noted that the Commonwealth had quoted the statute in the information, as well as provided additional details, and explained that "it

is not fatal that the Commonwealth did not detail **which** overt act; the fact that the overt act was referenced, and in doing so, [Appellant] was given notice of which charges he needed to defend against is sufficient to satisfy due process." (Trial Court Opinion, 3/21/24, at 12). We agree. The information, as stated, was sufficient to satisfy any due process concerns. ***See Sims, supra***; ***Alston, supra***. Therefore, the trial court did not err in denying his motion for judgment of acquittal on this ground.

In Appellant's final issue, Appellant argues that before the Commonwealth may introduce a defendant's statement, it must first establish by independent evidence that a crime occurred. In other words, Appellant contends that the court must determine whether the Commonwealth has proven the *corpus delicti* of the crimes charged prior to admission of the defendant's statement. Appellant asserts that here, the court erroneously found that the Commonwealth had met its burden and admitted Appellant's recorded statement into evidence. Appellant further complains that the court should have determined whether the Commonwealth had satisfied the *corpus delicti* rule when ruling on his motion for judgment of acquittal. Appellant concludes he is entitled to relief on these grounds. We disagree.

Our standard of review for a challenge to the *corpus delicti* rule is well-settled.

> The *corpus delicti* rule is designed to guard against the "hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." The *corpus delicti* rule is a rule of evidence. Our standard of

- 25 -

review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed. The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's **admission** of the accused's statements and the second step concerns the fact finder's **consideration** of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

**Commonwealth v. Young**, 904 A.2d 947, 956 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (quoting **Commonwealth v. Rivera**, 828 A.2d 1094, 1103-04, n. 10 (Pa.Super. 2003), *appeal denied*, 577 Pa. 672, 842 A.2d 406 (2004)) (internal quotation marks omitted) (emphasis in original).

Instantly, we note at the outset that Appellant's argument is somewhat conflated. Although Appellant states in his summary of argument section that the court erred in both phases of its ruling concerning the admissibility of Appellant's statement, and in permitting the jury to consider the statement when rendering a verdict (**see Young, supra**), in the body of the argument section on this issue Appellant focuses solely on the court's ruling prior to

admission of Appellant's statement.[6] Thus, we limit our analysis to the court's ruling on the admission of Appellant's statement.

Appellant made a motion at trial to exclude his statements based on the *corpus delicti* rule. The trial court ruled on the motion as follows:

> … in considering this motion, I have reviewed the elements of the crime charged, and the evidence that's presented thus far and I'm going to go through that.
>
> \* \* \*
>
> … we have a report of a home invasion here. Shots fired into a structure at this address. So in making my decision on this motion, I considered there are several apartments at this structure. I find it sufficient that there was an active home invasion reported at this address, even if not a specific apartment inside.
>
> \* \* \*
>
> There's a report of four individuals being involved. I've considered the video evidence that was offered. I balanced in that consideration what I view to be limitations of some of the videos.
>
> \* \* \*
>
> Considering that evidence with all the other evidence, I find that the standard of more probably than not has been met. There's testimony of damage to the door, the property owner fixing it the next day and securing it.

---

[6] Appellant generically states at the conclusion of this section: "This finding was erroneous as the Commonwealth had not presented sufficient information to allow for the admission of Appellant's statement to police, and Appellant's Motion for [Judgment of Acquittal] should have been granted." (Appellant's Brief at 51). Nevertheless, Appellant cites only the court's remarks relative to Appellant's initial motion to exclude his statement, and cites nothing regarding the court's ruling on his motion for judgment of acquittal.

(N.T. Trial, 7/19/23, at 5-9). Based upon this evidence, the trial court determined that "four individuals, acting in concert, attempted to forcibly gain entry to the victim's apartment and discharged a firearm several times into the apartment." (*See* Trial Court Opinion, 3/21/24, at 15). While the court considered other potential explanations for some of the evidence, it still determined that it was more likely than not that a crime had been committed. (*See id.*) On this record, we see no abuse of discretion in its court's evidentiary ruling. *See Young, supra*. Therefore, Appellant's final issue on appeal merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2024