J-A17040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE ANDERSON | : | |
| | : | |
| Appellant | : | No. 1062 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0001662-2020

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 10, 2025**

Appellant, George Anderson, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial conviction for firearms not to be carried without a license.[1]  We affirm.[2]

The trial court set forth the relevant facts and procedural history of this case as follows:

[The testimony adduced at the suppression hearing in this

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6106(a).

[2] As we explain more fully *infra*, this Court originally affirmed Appellant's judgment of sentence on December 5, 2023.  *See **Commonwealth v. Anderson**,* No. 1062 EDA 2022 (Pa.Super. filed Dec. 5, 2023) (unpublished memorandum).  Our Supreme Court subsequently granted allowance of appeal, and on July 23, 2025, the Court reversed and remanded the matter to this Court for further proceedings consistent with its opinion.  *See **Commonwealth v. Anderson**,* ___ Pa. ___, 340 A.3d 297 (2025).

matter is as follows.] On May 7, 2020, at approximately 10:54 p.m., Officer Jeffrey Walls of the Chester City Police Department was on routine patrol, in uniform and in a marked vehicle, in the area of the 200 Block of East 14th Street. Officer Walls was at a red light when he observed a silver Jeep traveling south in the 1400 block of Edgemont Avenue, with a green light, when the vehicle abruptly came to a stop upon observing the officer, and then made a left hand turn without a turn signal. Officer [Walls] observed the vehicle had a cracked windshield, and he could see that the inspection sticker was expired. Officer [Walls] then got behind the vehicle, and was unable to read the license plate due to a hazy plastic cover over top of it, and dim license plate lights, which is a violation of the Motor Vehicle Code.

Officer [Walls] performed a traffic stop, which was located in a high crime area, based on numerous shootings, robberies, drug sales, gang activity and homicides in the area. Upon pulling the vehicle over, [O]fficer [Walls] read the registration and determined it was expired. While Officer [Walls] was still seated in his patrol vehicle, he observed furtive movements towards the center console within the vehicle, and dropped his head down toward the center console.

Officer [Walls] approached the vehicle, and [Appellant] provided his information, which revealed his license was suspended (DUI related) and he was not the owner of the vehicle. Officer [Walls] smelled the odor of marijuana inside the vehicle and asked [Appellant] if he had anything illegal inside the vehicle, to which he responded, while opening the center console, I don't have anything in here except hand sanitizer. Officer [Walls] found this strange and asked again if he had anything illegal, at which point [Appellant] became extremely nervous and [started] reaching around his person and [patting] his sides[.] Officer Walls asked [Appellant] to exit the vehicle and he performed a pat down search for weapons and was placed toward the rear of the vehicle.

Officer Litivenko arrived on location, and at that time, Officer Walls was performing a protective sweep of the areas of the vehicle within reach of [Appellant]. The rear of the center console was dislodged, and [O]fficer [Walls] could see the handle of a firearm. [Appellant] was placed into

custody.

> The vehicle was to be towed, in accordance with Department policy and procedures, which were followed, and an inventory search was performed. Officer Litivenko observed marijuana on the passenger side of the vehicle in plain sight upon opening the door.
>
> [Appellant] was taken back to police headquarters where Officer Walls read him **Miranda**[3] and asked if he would be willing to give a written statement that it was his firearm. [Appellant] replied that he was the only person in the car, so it has to be his, but he would not give a written statement. There is nothing in the record that indicates the statement was the result of coercion or other unlawful means. [Appellant] knowingly and voluntarily made the statement to police.

(Trial Court Opinion, filed 11/8/22, at 2-3) (internal citations omitted).

Procedurally, the Commonwealth charged Appellant with possession of a firearm prohibited, possession of a firearm with an altered manufacturer number, firearms not to be carried without a license, possession of a controlled substance, possession of marijuana, possession of drug paraphernalia, and several violations of the motor vehicle code.

On January 12, 2021, Appellant filed a motion to suppress. The trial court conducted a hearing on the motion on February 24, 2021, at which Officer Walls testified to the above facts. The Commonwealth argued, *inter alia*, that suppression should be denied because Appellant failed to carry his burden to establish he had a reasonable expectation of privacy in the car

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

where Appellant was not the registered owner of the vehicle. Appellant presented no evidence at the suppression hearing, but he argued that the Commonwealth's evidence rebutted its own assertion that Appellant lacked a reasonable expectation of privacy.

The trial court noted that it understood and agreed with the Commonwealth's argument, but the court ultimately took the matter under advisement. On April 1, 2021, the court denied the motion to suppress, and the case proceeded to trial. Following a bifurcated trial, a jury convicted Appellant of carrying a firearm without a license, and acquitted Appellant of possession of a firearm prohibited and possession of a firearm with an altered manufacturer number.[4] On February 28, 2022, the court sentenced Appellant to 42 to 84 months' incarceration. On March 30, 2022, Appellant filed a timely notice of appeal.

As previously mentioned, on December 5, 2023, this Court affirmed the judgment of sentence. In so doing, this Court held that Appellant had failed to establish a reasonable expectation of privacy in the vehicle.[5] Appellant petitioned the Pennsylvania Supreme Court for an allowance of appeal, which

_____

[4] The Commonwealth withdrew the other charges prior to trial.

[5] Specifically, this Court explained that Appellant was not the registered owner of the vehicle and he presented no evidence that he had permission to drive the car on the day of his arrest. Under such circumstances, this Court concluded that Appellant failed to demonstrate that he had the authority to operate the vehicle.

- 4 -

the Court accepted to consider the following question:

> Whether a defendant's burden to establish a reasonable expectation of privacy at a suppression hearing requires that defendant to affirmatively present evidence of permission to use the vehicle where the defendant is not the registered owner of [the] vehicle but the Commonwealth's evidence does not otherwise negate an expectation of privacy?

*Anderson, supra* at \_\_\_, 340 A.3d at 303.[6]

Ultimately, the High Court reversed this Court's initial decision. The High Court explained that "[a]lthough the defendant bears the ultimate burden of persuasion with respect to his reasonable expectation of privacy, the Commonwealth bears the initial burden of production to present evidence the defendant lacked such an expectation." *Id.* at \_\_\_, 340 A.3d at 308. The Court held that "[t]he bare fact the car driven by [A]ppellant was not registered to him did not, without more, render it more likely than not that he lacked a reasonable expectation of privacy in the vehicle." *Id.* at \_\_\_, 340 A.3d at 309. Thus, the Court reasoned "that evidence indicating the driver of a vehicle is not the registered owner, standing alone, is insufficient to meet the Commonwealth's initial burden of production and, consequently, such evidence does not shift the burden of proving a reasonable expectation of

---

[6] The Supreme Court denied allowance of appeal on the second issue presented by Appellant: "Whether the Pennsylvania Constitution and *Commonwealth v. Alexander*, 664 Pa. 145, 243 A.3d 177 (2020), support an additional requirement to show a reasonable expectation of privacy in order to challenge police conduct at a suppression hearing?" *Id.* at \_\_\_, 340 A.3d at 303 n.8.

privacy to the defendant." *Id.* at ___, 340 A.3d at 310.

The Court further continued:

> In so holding, we hasten to emphasize the narrowness of our decision. We do not foreclose the possibility that evidence a vehicle is registered to someone else, together with other indicia of unlawful possession, may suffice to meet the Commonwealth's initial burden under a totality of the circumstances analysis. … The totality of the circumstances here included the following: the car had an expired inspection sticker; the car's registration was expired; [A]ppellant had a suspended driver's license due to a DUI conviction; [A]ppellant was acting "extremely nervous" during the traffic stop; the car was not reported stolen; [A]ppellant opened the center console and said, "I don't have anything in here except hand sanitizer;" and following the recovery of the gun, [A]ppellant told the officer "I was the only person in the car, so it has to be mine[.]"
>
> Because the question upon which we granted review is confined to whether evidence that a driver is not the registered owner is sufficient by itself to carry the Commonwealth's initial burden of production, we do not resolve the separate issues of whether the Commonwealth here carried its threshold burden based on the totality of the evidence, and if so, whether [A]ppellant sustained his ultimate burden of persuasion. Nor, for that matter, do we address the trial court's alternate holding that suppression was unwarranted regardless of whether [A]ppellant had a reasonable expectation of privacy in the vehicle. *See* Trial Court Op., 11/8/22, at 4 ("The traffic stop lawfully evolved into an investigative detention. A lawful pat-down for officer safety occurred, as well as a lawful protective sweep of the defendant's reachable area within the vehicle."); *see also In re A.J.R.-H.*, 647 Pa. 256, 188 A.3d 1157, 1175-76 (2018) ("The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.") (internal citation omitted). Instead, we leave these issues beyond the scope of our allocatur grant for the Superior Court's consideration in the first instance on remand. *See Commonwealth v. Koger*, ___ Pa. ___, 295 A.3d 699, 711 n.12 (2023) (this Court's "usual practice" with respect to issues not addressed

in the lower court is to remand for further consideration).

*Id.* at \_\_\_, 340 A.3d at 310-11 (some internal citations omitted). Accordingly, the Court reversed and remanded to this Court for further proceedings consistent with its opinion.

On remand, this Court considers the following two issues[7] presented by Appellant.

> 1. Did the trial court err by denying [A]ppellant's motion to suppress physical evidence and statements where [A]ppellant had a reasonable expectation of privacy in the areas of the vehicle searched?
>
> 2. Did the trial court err by denying [A]ppellant's motion to suppress physical evidence and statements where the officer prolonged the traffic stop beyond its original mission absent reasonable suspicion of criminal activity such that the searches of the vehicle were unlawful and there was no other lawful basis for a warrantless search, in violation of the United States and Pennsylvania Constitutions?

(Appellant's Brief at 4).[8]

_____

[7] In his initial appeal to this Court, Appellant challenged the jury instruction for carrying a firearm without a license, and the legality of his sentence. Appellant abandoned those claims in his petition for allowance of appeal, and our Supreme Court did not grant review concerning those issues. *See Anderson, supra* at \_\_\_, 340 A.3d at 302 n.8. Thus, we do not re-address these issues on remand.

We further note that this Court did not direct the parties to file supplemental briefs upon remand. As such, we glean Appellant's arguments from his initial brief.

[8] Because a reasonable expectation of privacy is a predicate required to challenge a search, we address that question first. *See Commonwealth v. Maldonado*, 14 A.3d 907, 910 (Pa.Super. 2011). We have reordered the questions accordingly.

Our standard of review of a trial court's denial of a motion to suppress evidence is well settled:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Hoyle*, 337 A.3d 544, 561 (Pa.Super. 2025) (quoting *Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa.Super. 2017), *appeal denied*, 645 Pa. 571, 181 A.3d 1080 (2018)). Additionally, "[w]ith respect to the suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part[,] or none of the evidence presented[.]" *Commonwealth v. Easter*, 331 A.3d 675, 679 (Pa.Super. 2025), *appeal denied*, ___ Pa. ___, ___ A.3d ___ (2025) (citation omitted).

In his first issue, Appellant argues that the trial court erred in finding that he had no reasonable expectation of privacy in the vehicle searched. Specifically, Appellant claims that the Commonwealth's sole reliance on the fact that he did not own the vehicle was insufficient to establish the lack of a

privacy interest. Appellant contends that "the mere fact that a person is operating a motor vehicle is sufficient to sustain a finding of reasonable expectation of privacy in the vehicle where there is no other evidence suggesting that a defendant had no reasonable expectation of privacy in a vehicle." (Appellant's Brief at 40). Appellant emphasizes that there was no other evidence presented by the Commonwealth to suggest that he had no reasonable expectation of privacy. Rather, Appellant insists that evidence showed he was previously issued a traffic citation while driving the vehicle, and that he was previously involved in an accident in the vehicle, which demonstrates he had a reasonable expectation of privacy in the vehicle. Appellant concludes the court's finding that he lacked a reasonable expectation of privacy in the vehicle was erroneous. We agree.

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures." *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014). Article I, Section 8 can provide no less protection than what the Fourth Amendment requires. *Commonwealth v. McCree*, 592 Pa. 238, 246, 924 A.2d 621, 626 (2007). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Maldonado, supra* at 910.

As this Court has explained:

> [I]t is axiomatic that a defendant seeking suppression must demonstrate a reasonable expectation of privacy that was violated.  **See Commonwealth v. Millner**, 585 Pa. 237, 888 A.2d 680, 692 (2005) ("[A] defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.").  While the Commonwealth has the burden of going forward with evidence and of establishing at the suppression hearing that the challenged evidence was not obtained in violation of the defendant's rights, "the defendant still must meet a burden of persuasion that his or her expectation of privacy was violated."  **Commonwealth v. Enimpah**, 62 A.3d 1028, 1032 (Pa.Super. 2013).

**Hoyle, supra** at 564.  **See also Commonwealth v. J. Moore**, 310 A.3d 802, 807 (Pa.Super. 2024) (explaining that "[a]lthough the defendant bears the burden of persuasion with respect to his privacy interest, the Commonwealth bears the initial burden of production to present evidence that the defendant's constitutional rights were not infringed.  If the Commonwealth satisfies this initial burden, it need do no more, absent proof to the contrary from the accused himself") (internal citations and quotation marks omitted).

"An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable."  **Commonwealth v. Burton**, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*) (citations omitted).

This Court has explained:

> "To determine whether one's activities fall within the right of privacy, we must examine: first, whether [the defendant] has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to

- 10 -

recognize as reasonable." [**Commonwealth v. Brion**, 539 Pa. 256, 60, 652 A.2d 287, 288-89 (1994).] "To satisfy the first requirement, the individual must demonstrate that he sought to preserve something as private. To satisfy the second, the individual's expectation of privacy must be justifiable under the circumstances." **Commonwealth v. [E.] Moore**, 928 A.2d 1092, 1098 (Pa.Super. 2007).

**Commonwealth v. Prisk**, 13 A.3d 526, 531 (Pa.Super. 2011).

"The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." **Burton, supra** at 435 (citations omitted).

In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered and the determination will ultimately rest upon a balancing of the societal interests involved. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

**E. Moore, supra** at 1098 (quoting **Commonwealth v. Viall**, 890 A.2d 419, 422 (Pa.Super. 2005)).

We reiterate that our High Court has now made clear that "[t]he bare fact the car driven by [A]ppellant was not registered to him did not, without more, render it more likely than not that he lacked a reasonable expectation of privacy in the vehicle." **Anderson, supra** at ___, 340 A.3d at 309. Hence, in order for the Commonwealth to meet its initial burden of production, it must offer additional evidence that the defendant was not in lawful possession of the vehicle, and thus lacked a reasonable expectation of privacy. **See id. See**

- 11 -

*also Byrd v. United States*, 584 U.S. 395, 138 S.Ct. 1518, 200 L.Ed.2d 805 (2018) (holding that someone in otherwise lawful possession and control of rental car has reasonable expectation of privacy in it even if rental agreement does not list him or her as authorized driver). *Compare Commonwealth v. Jones*, 874 A.2d 108, 120 (Pa.Super. 2005) (holding that "[a]ppellant's subjective expectation of privacy was not reasonable where he was the operator of a rental car but not the named lessee, was not an authorized driver, the named lessee was not present in the vehicle, [a]ppellant offered no explanation of his connection to the named lessee, and the return date for the rental car had passed").

Here, Officer Wall testified at the suppression hearing that he checked the registration of the vehicle that Appellant was driving, and the owner came back as Marchel Scott; the vehicle did not come back as stolen. (*See* N.T. Suppression Hearing, 2/24/21, at 21-22). In arguing that Appellant did not have a reasonable expectation of privacy, the Assistant District Attorney explained that the Commonwealth "showed our initial burden. … [T]he car's not registered to [Appellant], it's registered to another person, therefore, it – the burden shifts to a burden of persuasion." (*Id.* at 64).

As discussed, our Supreme Court rejected the Commonwealth's argument and expressly held that the fact that the vehicle was not registered to Appellant was insufficient **on its own** to shift the burden of persuasion to Appellant. *See Anderson, supra*. Nevertheless, the Court did not "foreclose

the possibility that evidence a vehicle is registered to someone else, together with other indicia of unlawful possession, may suffice to meet the Commonwealth's initial burden under a totality of the circumstances analysis."

*Id.* at ___, 340 A.3d at 310. As the Court summarized:

> The totality of the circumstances here included the following: the car had an expired inspection sticker; the car's registration was expired; [A]ppellant had a suspended driver's license due to a DUI conviction; [A]ppellant was acting "extremely nervous" during the traffic stop; **the car was not reported stolen**; [A]ppellant opened the center console and said, "I don't have anything in here except hand sanitizer;" and following the recovery of the gun, [A]ppellant told the officer "I was the only person in the car, so it has to be mine[.]"

*Id.* (emphasis added). Based on the totality of the circumstances, we cannot say that the Commonwealth satisfied its threshold burden to establish by a preponderance of the evidence that Appellant was not in lawful possession of the vehicle and thus lacked a reasonable expectation of privacy. ***See id.*** Consequently, the burden did not shift to Appellant to establish he had a reasonable expectation of privacy therein. Therefore, we turn to Appellant's second issue on appeal.

In his second issue, Appellant initially argues that the court erred in denying his motion to suppress because Officer Walls prolonged the traffic stop and continued to detain him without reasonable suspicion of criminal activity. Appellant claims that the detention was based on the officer's unparticularized suspicion and lacked any articulable facts demonstrating that Appellant was engaged in criminal activity. Second, Appellant contends that

even if the officer had reasonable suspicion to justify detaining Appellant, there was no lawful basis for a protective search of the vehicle. Appellant insists that the protective search itself exceeded the acceptable scope of Appellant's area because the firearm was in a compartment in the back of the center console. On these grounds, Appellant concludes that the trial court erred when it denied his motion to suppress. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001)).

> Generally, a motor vehicle stop is an investigative detention. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa.Super. 2023). "[A]n investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." *Id.* (citation omitted). "Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity." *Id.* (citation omitted).

*Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa.Super. 2023).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625 (Pa.Super. 2000)). "These circumstances are to be viewed through the eyes of a trained officer, not an ordinary citizen." *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa.Super. 2006), *appeal denied*, 593 Pa. 754, 932 A.2d 75 (2007). "In making this determination, we must give due weight…to the specific reasonable inferences [the officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citation and quotation marks omitted).

> In the context of a traffic stop, the United States Supreme Court held that the duration of police inquiries "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop…and attend to related safety concerns." [*Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)] (citations omitted). A stop becomes unlawful when it "last[s]…longer than is necessary" to complete its mission, the rationale being that the "[a]uthority for the seizure…ends when tasks tied to the traffic infraction are— or reasonably should have been—completed." *Id.* (citations omitted).

*Ross, supra* at 792. "[A]n officer's mission includes ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez, supra* at 355, 135 S.Ct. at 1615 (quotation marks, citation, and brackets omitted).

Importantly:

> [T]asks relating to officer safety are also part of a traffic stop's mission when done purely in an interest to protect the officers. This safety interest stems from the fact that traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely.

*Ross, supra* at 792-93 (quotation marks and citations omitted).

In *Ross, supra*, this Court examined the propriety of the trial court's suppression of a firearm removed from a vehicle. There, after pulling over the vehicle because of an inoperable taillight, officers ran the appellee's information and discovered that the appellee had a revoked license to carry a firearm. The officer then returned to the vehicle and asked whether the appellee had a firearm. The appellee admitted that he did and, after removing the firearm, the officers arrested the appellee. Initially, the trial court granted the appellee's motion to suppress. On appeal, this Court reversed, holding that the officer did not initiate a new investigation during the traffic stop when he asked about the presence of weapons, but posed the question while the stop was ongoing. This Court explained:

One particular concern for officers during a traffic stop is the proliferation of guns, including the substantial increase in the number of people possessing firearms, the rise in mass shootings, and the ability to carry a concealed weapon in vehicles in Pennsylvania. Clearly, neither the United States Constitution nor the Pennsylvania Constitution require officers to gamble with their personal safety during traffic stops. Therefore, in the context of traffic stops, police officers may take reasonable precautions when the circumstances give rise to legitimate safety concerns.

*Id.* at 797-98 (citations and footnote omitted).

As to the constitutionality of a protective sweep search for weapons within the passenger compartment of a vehicle, this Court has explained that the standard is reasonable suspicion rather than probable cause:

In [***Michigan v. Long***, 463 U.S. 1032 (1983)], the Supreme Court applied the principles announced in [***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], to a search of the passenger compartment of a vehicle for weapons:

Our past cases indicate that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. ***See Terry***, 392 U.S. at 21. 'The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of

- 17 -

others was in danger.' *Id.* at 27. If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested.

*Long*, 463 U.S. at 1049-50 (footnote omitted).

The Court emphasized that this holding does not permit police to conduct a search of a vehicle during every investigative stop. *Id.* at 1050 n.14. "A *Terry* search, unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime. The sole justification of the search is the protection of police officers and others nearby." *Id.* (citation and quotation omitted). The Court stated that an officer must therefore have reasonable suspicion that the person subject to the stop has a weapon in order to conduct a lawful search of the passenger compartment of a vehicle at the time of the stop. *Id.*

*Commonwealth v. Cartegena*, 63 A.3d 294, 298-99 (Pa.Super. 2013) (*en banc*) (footnotes, brackets, and ellipses omitted).

In *Commonwealth v. Muhammad*, 289 A.3d 1078, 1089, (Pa.Super. 2023), *aff'd*, _____ Pa. _____, 335 A.3d 1047 (2025),[9] this Court held that a protective search was constitutional where the officer specifically testified that the appellant's behavior made him "feel as if there was something that could be dangerous." *Id.* at 1089. The officer "was not wearing a bullet proof vest or carrying a taser," and his interaction with the appellant "'absolutely' signaled to him based on his training and experience that [the appellant] was potentially armed and dangerous." *Id.* Finally, "[t]he search of the car was

---

[9] The Supreme Court had granted allowance of appeal on another issue unrelated to the suppression ruling.

restricted to those areas that [the appellant] would have immediate control of and could contain a weapon." *Id.*

Instantly, the trial court denied Appellant's motion to suppress the evidence of the stop, finding that the officer had reasonable suspicion to conduct an investigative detention. Specifically, the trial court explained:

> Officer Walls stopped [Appellant] due to Motor Vehicle violations he observed. [Appellant's] license was suspended (DUI related), and due to the officer's observation of furtive movements within the vehicle, the odor of marijuana, extremely nervous behavior, and reaching around his person, he was searched for officer safety and placed toward rear of vehicle. The traffic stop seamlessly evolved into an investigative detention, supported by reasonable suspicion, based on the totality of circumstances, in light of the officer's training and experience in this high crime area. A lawful pat-down occurred for officer safety as well as a protective sweep of the vehicle, at which point, officer observed the handle of a firearm through a section of the console that was ajar. The vehicle was to be towed in accordance with the written Department policy….

(Trial Court Opinion at 4).

The record supports the court's analysis. After initiating the stop for motor vehicle violations, Officer Walls noticed that Appellant was moving around inside the vehicle, making furtive movements towards the center console area. (N.T. Suppression Hearing, 2/24/21, at 20). Upon approaching the vehicle, the officer asked Appellant for his license and registration. Appellant was not the owner of the vehicle, and a search revealed that Appellant's driver's license was suspended for DUI. (*Id.* at 22). When he returned to the vehicle, Officer Walls smelled marijuana and asked Appellant

if he had anything illegal in the vehicle. Appellant nervously grabbed a hold of the center console, opened it, and stated that he did not have anything in it except hand sanitizer. (*Id.* at 23). Finding this response strange, Officer Walls asked again if Appellant had anything illegal and Appellant became extremely nervous and started reaching around his body and his sides. (*Id.* at 24). The officer testified that he was concerned about officer safety and believed that there was something more afoot rather than standard nervousness from being stopped by police. (*Id.* at 24). Although Officer Walls had backup at the time of the protective search, he was concerned that Appellant might have been able to flee from backup and obtain a weapon from inside the front of the vehicle. (*Id.* at 40). Thus, Officer Walls asked Appellant to exit the vehicle and initiated a protective sweep of Appellant and the vehicle, wherein he located a firearm that was in the rear of the center console.

In consideration of the totality of the circumstances, and in light of Officer Walls's training and experience, we conclude that the initial motor vehicle traffic stop, based on Appellant's motor vehicle violations, was lawful and thereafter evolved into an investigative detention. The above-mentioned facts provided Officer Walls with reasonable suspicion to conduct an investigatory detention, and to prolong the initial traffic stop to do so. *See Young, supra*; *Cottman, supra*.

Further, Officer Walls was justified in performing a protective sweep of

the vehicle based on concerns for the officers' safety and security. **See Ross, supra**. Appellant was acting extremely nervous, making furtive movements toward the center console, and started patting at his sides when asked if he had anything illegal in the car. Officer Walls testified that these actions led him to be concerned about officer safety, such that he conducted a search of the immediate area where Appellant was sitting and those locations that Appellant would have been able to reach within a reasonable distance. The record before us supports the trial court's conclusion that Officer Walls conducted a legal protective search of the immediate area that Appellant had access to within the vehicle. **See Muhammed, supra**. Furthermore, because the back of the center console was reachable from the driver's seat, it was reasonable for the officer to search that area. Therefore, the trial court properly denied Appellant's suppression motion. **See Ford, supra**.[10]

---

[10] Moreover, even if the officers did not have reasonable suspicion to conduct the search, we reiterate that Appellant's driver's license was suspended, and he was operating a motor vehicle which was not registered to him. Officer Walls testified that he arranged for a tow of the vehicle based on department policy permitting a tow of vehicles with an unlicensed driver. The officer further explained that police conduct an inventory of towed vehicles in accordance with department policy. (**See** N.T. Suppression Hearing, 2/24/21, at 31-33). **See also Commonwealth v. Lagenella**, 623 Pa. 434, 83 A.3d 94 (2013) (holding that once police have lawfully impounded vehicle, they may conduct inventory search if doing so is in accordance with reasonable, standard policy of routinely securing and inventorying contents of impounded vehicle). Thus, the firearm would have been discovered during the inventory search and would have been admissible under the inevitable discovery doctrine. **See Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa.Super.
*(Footnote Continued Next Page)*

Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Pellegrini did not participate in the consideration or decision of this case.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/10/2025

---

2009) (stating: "If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible").